# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, : | |
| : | Civil Action No. |
| **Plaintiff,** : | |
| : | |
| v. : | JURY TRIAL DEMANDED |
| : | |
| ALPHA EPSILON PI FRATERNITY, : | |
| INC., ALPHA EPSILON PI, : | |
| ALPHA KAPPA CHAPTER, : | |
| and CHARLES POE, individually  : | |
| and as agent of ALPHA EPSILON PI : | |
| FRATERNITY and ALPHA EPSILON : | |
| PI, ALPHA KAPPA CHAPTER, : | |
| : | |
| **Defendants.** : | |

## COMPLAINT AND JURY DEMAND

Plaintiff John Doe (hereinafter referred to as "Plaintiff" or "John Doe[1]"), by his attorneys, Summers, McDonnell, Hudock, Guthrie & Rauch, P.C., and Nesenoff & Miltenberg, LLP, files this Complaint against ALPHA EPSILON PI FRATERNITY, INC. ("AEPi, Inc."); Alpha Epsilon Pi - Alpha Kappa Chapter ("AEPi Alpha Kappa Chapter"); and Charles Poe, Master, Alpha Kappa Chapter ("Poe")(collectively, "the Fraternal Organization"); and in support thereof alleges as follows:

---

[1] Plaintiff has filed herewith a motion to proceed pseudonymously as "John Doe." As Charles Poe and Jane Roe are college students, Plaintiff has identified them pseudonymously.

## THE NATURE OF THIS ACTION

1.      This action arises out a false allegation of sexual misconduct against John Doe, made by Jane Roe, to Carnegie Mellon University's ("CMU") Title IX office. The allegation was made in November of 2017, and CMU has not yet completed its investigation, or held the requisite hearing, to determine the outcome. Despite the fact that the CMU investigation is ongoing and no finding of responsibility has been made, Defendants ALPHA EPSILON PI, INC., AEPi Alpha Kappa Chapter, and Charles Poe wrongfully suspended Plaintiff from the fraternity on September 11, 2018.

2.      The suspension of Plaintiff was taken unilaterally by Defendant Charles Poe, Master, AEPi Alpha Kappa Chapter, in blatant disregard and in violation of the procedures and processes required to discipline members of the organization as set forth in 1) the Alpha Epsilon Pi Constitution – Alpha Kappa Chapter, 2) the Supreme Constitution of the Alpha Epsilon Pi Fraternity, Inc., and 3) the Bylaws of the Alpha Epsilon Pi Fraternity.

## THE PARTIES

3.      Plaintiff is a natural person and a resident of Kentucky.

4.      ALPHA EPSILON PI, INC. is a non-profit corporation, incorporated under the laws of the State of New York, with Headquarters in Indianapolis, IN.

5. Alpha Epsilon Pi – Alpha Kappa Chapter is an unincorporated association that has received a charter from the Supreme Board of Governors of ALPHA EPSILON PI, INC.

6. Charles Poe is a natural person who is a resident of Pennsylvania and the Master of the Alpha Kappa Chapter of Alpha Epsilon Pi .

## JURISDICTION AND VENUE

7. This Court has federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states., and the amount in controversy is exceeds the amount of $75,000, exclusive of interests and costs.

8. This Court has personal jurisdiction over Defendants AEPi, INC., and AEPi-Alpha Kappa Chapter, on the ground that they are conducting business within the Commonwealth of Pennsylvania.

9. This Court has personal jurisdiction over Charles Poe on the ground that he was acting on behalf of Defendant AEPi-Alpha Kappa Chapter at all times relevant herein and personally acted within the Commonwealth of Pennsylvania.

10. Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### John Doe and Jane Roe's Relationship

11. On November 16, 2017, Jane Roe met with Board Members of AEPi—Alpha Kappa Chapter (Board Members). Roe told the Board Members that John Doe had sexually assaulted her on November 12, 2017. The Board Members told Jane Roe that she should bring this allegation to the Carnegie Mellon University (CMU)'s Title IX Office. Later that evening, Jane Roe sent an email to CMU's Title IX Office stating that she wanted to report and get assistance for "an incident" that had happened to her.

12. On November 21, 2017, Roe met with the CMU Title IX investigator, Jamie Edwards-Pasek (Edwards). Roe stated that she had sex with Plaintiff ("Doe") on November 12, 2017, and that she did not think it was consensual. She stated further that her main wish was for Doe to be removed from his fraternity, AEPi, because she had friends and study partners there and wanted to continue to visit and spend time at the AEPi house.

13. Roe also requested that Edwards email AEPi's President, which Edwards did on November 30th. Edwards subsequently met with the AEPi's President on December 1, 2017, and the President told Edwards that the leadership of AEPi had decided to wait for the Title IX investigation and student conduct process to conclude prior to taking any action.

14. On November 29, 2017, Roe met a second time with Edwards for the purpose of making a full statement for the Title IX and student conduct process.

15. Doe stated that he knew Roe through his fraternity, AEPi, that she had been dating another member of that fraternity, W#3, who was friendly with Doe. W#3 was a graduate student and alumnus of AEPi. Roe was a freshman.

16. Per Roe's account, Plaintiff and Roe spent some time together at his apartment on the evenings of November 12 and November 13, 2017. They studied together, and the Roe slept over at Plaintiff's apartment both nights.

17. On the first occasion, they had sexual intercourse, which Plaintiff has at all times described as consensual. At some point during those two days, they made plans to have dinner on November 14, 2017.

18. Roe stated that on November 14, 2017, she saw Doe at the AEPi house, and they spoke.

19. Roe stated that at some time the same day, she sent Doe a message on Facebook which stated that she did not think the last few days were a good idea, she did not think they should get dinner, and that she needed space. Doe replied by saying "for sure." Roe then blocked Doe on Facebook, Instagram and other sites.

20. Roe stated that she saw W#3 later that day, and that they spent time together that evening. At some point, Roe decided to tell W#3 about what had happened between her and Doe. She stated W#3 was "very frustrated with Doe"

when she told him what had happened. She also stated that W#3 said to her, "you realize that he basically took advantage of you." Roe stated that when W#3 said that, she became "consciously aware" of what had happened.[2]

21.     Roe stated that she started telling other individuals what happened the following day, November 15, 2017. One of the people she told, an AEPi leader, decided that they should meet with two other AEPi board members and tell them what happened. The meeting occurred on Thursday, November 16, 2017, during which Roe told her story to the AEPi board members, who responded by telling her that she needed to reach out to Title IX, which she did (via email) later that evening.

22.     Roe met with Title IX investigator Jamie Edwards-Pasek ("Edwards") on November 21, 2017, and told Edwards that she wanted a No Contact Agreement, and that she wanted to know that Doe would not be at the Hillel house on Monday night for the study sessions.

23.     On December 1, 2017, Edwards met with AEPi's President/Master, Roe, who advised Edwards that the leadership of AEPi had decided to wait for the Title IX investigation and student conduct process to conclude prior to taking action.

---

[2] W#3 told the Title IX investigator that he felt jealous when he found out Roe had kissed Plaintiff and that she had made dinner plans with him.

24. On January 12, 2018, Edwards interviewed the Plaintiff. He recounted, in detail, his consensual sexual encounter with Roe.

### John Doe's Unblemished Academic and Disciplinary Record

25. John Doe began his education at CMU in the Fall of 2016. He was majoring in Computer Science and had no disciplinary issues at any time in his educational career.

26. In addition, John Doe did not have any disciplinary or other problems with the Fraternal Organization and was a member in good standing.

### AEPi – Alpha Chapter Suspends Plaintiff

27. Plaintiff was unable to attend CMU the Spring semester of 2018, due to medical and family issues. He went back to CMU for the Fall semester of 2018, which started in late August.

28. On or about September 11, 2018, Plaintiff received a letter from AEPi – Alpha Kappa Chapter, informing him that the fraternity had "been made aware of potential health and safety violations" by Plaintiff. Further the letter stated, "In accordance with fraternity policy, your membership privileges are temporarily suspended," and that Plaintiff was not permitted to attend any chapter event, or be present in the common areas at the chapter house until further notice. The letter was signed by Defendant Poe, President/Master, Alpha Kappa Chapter. The letter contained no other information.

29. The governing documents for AEPi – Alpha Chapter are: 1) Alpha Epsilon Pi Constitution – Alpha Kappa Chapter; 2) the Supreme Constitution of the Alpha Epsilon Pi Fraternity, Inc.; and 3) the Bylaws of the Alpha Epsilon Pi Fraternity. These documents are attached to and incorporated into this Complaint as Exhibits 1, 2 and 3, respectively.

30. These governing documents provide express procedures that are required to be followed when the Fraternal Organization seeks to discipline one of its members. *See* Exhibit 1, AEPi Constitution – Alpha Kappa Chapter, Article 8 "Suspension and Expulsion"; and Exhibit 3, Bylaws of AEPI, Article VI: "Judicial Procedures." Both of these governing documents require that there be written notice given to the brother against whom the action is sought, informing him of the charges, giving him an opportunity to be heard, and to be granted a hearing, which must take place "at a reasonable time for the Brother."

31. The Bylaws set forth the full procedure to be followed in such an investigation, which requires that any Brother wishing to file charges against another Brother must complete a form, and include the specific charges he is filing against the other Brother. *See* Exhibit 3 Bylaws, Article VI, Section 1 "Filing of Charges."

32. The charges then are reviewed by the Brotherhood Status Committee, which then votes, either to dismiss the charges or to refer the charges for further

proceedings, and the Brotherhood Status Committee is further required to inform the filer and the Brother against whom the charges are made, of its decision. *Id.* Section 2, Review by the Brotherhood Status Committee.

33. If the charges proceed, the Brotherhood Status Committee is required to notify the accused Brother of the charges by email and certified mail, and advise the Brother of his right to accept responsibility for the charges and the sanction or deny responsibility for the charges, and/or challenge the sanction, and to request a hearing. *Id.* Section 3, "Correspondence with the Accused Brother."

34. If the Accused Brother requests a hearing, the Brotherhood Status Committee must notify the Supreme Master, who must then empanel a hearing board of three Brothers of the Supreme Master's choosing, one of whom will be designated as the Chairman, and all of whom are required to have been brothers of the Fraternity for no less than 10 years. *Id.* Section 4, Disciplinary Hearing.

35. Following the Disciplinary Hearing the hearing board shall provide a written recommendation to the Supreme Board of Governors within 14 days, and either party may elect to submit a written statement in support of or opposing the recommendation of the hearing board. *Id.*

36. Finally, the Supreme Board of Governors makes the final adjudication of the matter, and notifies the filer and the Accused Brother of the decision. *Id.,* Section 5.

37. None of the foregoing processes and procedures were followed with respect to the suspension of the Plaintiff from the Fraternal Organization.

## COUNT I

### Breach of Contract
### (Against All Defendants)

38. Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

39. Based on the aforementioned facts and circumstances, the Defendants created an express and implied contract with Plaintiff, when Plaintiff accepted Defendants' offer of admission to the Fraternal Organization of Alpha Epsilon Pi – Alpha Kappa Chapter.

40. As set forth in detail above, the Defendants breached both express and implied agreement(s) with Plaintiff when they suspended him from the Fraternal Organization without following any of the procedures set forth in the Fraternal Organization's governing documents for disciplining its members.

41. As a direct and foreseeable consequence of the breaches set forth above, Plaintiff sustained damages, including, without limitation, emotional distress, loss of educational and career opportunities, financial injuries, and other direct and consequential damages, in excess of $75,000.

42. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees,

expenses, an injunction enjoining enforcement of the suspension, and costs and disbursements.

## COUNT II
## Negligent Infliction of Emotional Distress
## (Against All Defendants)

43. Plaintiff repeats and realleges each and every allegation hereinabove as if fully set forth herein.

44. Defendants' conduct as more fully outlined above, including but not limited to failing to provide due process, conduct a hearing and act prior to ant findings in the University's investigation was, at the very least, negligent.

45. Defendants' negligence proximately caused the harm to Plaintiff's reputation and educational career.

46. The Defendants' actions as more fully outlined above would naturally and probably result in emotional distress to Plaintiff.

47. The Defendants' actions did, in fact, cause severe emotional distress to Plaintiff.

48. The emotional distress suffered by Plaintiff physically manifested itself in symptoms including, but not limited to: sleeplessness; anxiety; headaches; nausea; nightmares; loss of appetite; and such other injuries and physical manifestations as may appear during the course of discovery in this matter.

## **PRAYER FOR RELIEF**

**WHEREFORE,** for the foregoing reasons, Plaintiff demands judgment against the Defendants as follows:

(i) For breach of contract a judgment against the Defendants, jointly and severally, awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements;

(ii) For negligent infliction of emotional distress, a judgment against the Defendants, jointly and severally, awarding Plaintiff damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements; and

(iii) An injunction against ALPHA EPSILON PI FRATERNITY, INC.; Alpha Epsilon Pi - Alpha Kappa Chapter; and Charles Poe, Master, Alpha Kappa Chapter directing all Defendants to: (i) reinstate Plaintiff to Alpha Epsilon Pi - Alpha Kappa Chapter; (ii) remove any record of Plaintiff's suspension from his records held by the Fraternal Organization.

## **JURY DEMAND**

Plaintiff herein demands a trial by jury of all issues so triable in the present matter.

**Dated: October 15, 2018**

>SUMMERS, MCDONNELL, HUDOCK, GUTHRIE & RAUCH, P.C.
>
>By: */s/ Kevin D. Rauch*
>Kevin D. Rauch, Esq.
>PA 83058
>945 East Park Drive, Suite 201
>Harrisburg, Pennsylvania
>
>NESENOFF & MILTENBERG, LLP
>
>By: */s/ Andrew T. Miltenberg*
>Andrew T. Miltenberg, Esq.
>NY 2399582
>(*pro hac vice* admission forthcoming)
>Stuart Bernstein, Esq.
>NY 2371953
>(*pro hac vice* admission forthcoming)
>Kara Gorycki, Esq.
>NY 4140992
>(*pro hac vice* admission forthcoming)
>
>363 Seventh Avenue, Fifth Floor
>New York, New York 10001
>(212) 736-4500
>
>*Attorneys for Plaintiff John Doe*